Good morning. The Illinois Federal Courts Second Division is now in session. I'll be judging the Daniel J. Pierce case for that. Good morning. Please be seated. Mr. Clark, please call the case. 15-0435, E-Z Movers v. Rowell, Director of Illinois Department of Employment Security. Good morning. Would the attorneys who are going to argue the case please approach the lectern and advise us of how much time they would like for their arguments. We are very understanding. Good morning, Your Honors. Linda Boachance on behalf of the department and its director. I'd like to reserve three minutes for rebuttal. How much for? Sorry? Oh, three minutes for rebuttal. Okay. Good morning, Your Honor. Ryan Hogason on behalf of plaintiff and appellee. I would like 15 minutes for my argument. Okay. More than sufficient. How much do you want for your argument? Others? Twelve minutes. Twelve? Okay. Very good. Thank you. Thank you. Counsel? Thank you. May it please the Court. The director did not clearly air in ruling based on Illinois law that E-Z Movers truck drivers and helpers were employees and not independent contractors, and that the company was responsible for making unemployment contributions on their behalf. The Illinois Unemployment Insurance Act provides that any service performed by an individual for an employing unit should be considered employment. In other words, the general rule is that a worker will be considered an employee. In order for a worker not to be considered an employee, the employer must satisfy all of the conditions set forth in Section 212 of the Act. Both the Act and Illinois Supreme Court cases analyzing the Act are very clear on this issue. The employer has to satisfy all of the conditions for its workers to be deemed independent contractors. The Illinois Supreme Court also noted long ago in Ross v. Cummings that the party's intent in structuring the employment relationship is not determinative. That is, whether the parties prefer to be independent contractors rather than employees does not control. Instead, the statutory elements are what determine whether a worker is an employee or an independent contractor. Section 212 provides that an employer must show that its workers are, A, free from misdirection and control in the performance of their services, B, that the work is outside the usual course of business or performed outside all places of business of the enterprise, and C, that the worker is engaged in an independently established business or trade for them to be considered independent contractors. The purpose of the Unemployment Insurance Act is to provide economic relief for Illinois workers who have become unemployed, so all debatable questions will be resolved in favor of finding that the workers are employees. Again, it's well settled that the employer has to satisfy all three conditions, and if it fails to meet even one, the workers will be deemed employees. Given the limited time that is provided for oral argument, why don't you tell us why you think the Director was correct and why the decision should be affirmed? Sure. Jumping straight to Section 212B of the Act, a worker is an independent contractor if the service is performed outside of the usual course of the business of the employer. And as the Supreme Court noted in Carpetland, the key question to ask when analyzing this section is whether the services are necessary to the business or whether they're merely incidental. In this case, as the Director correctly observed, there is simply no moving business without workers to move the goods. Although Easy Movers has suggested that there's a physical end to the business and a marketing end, that's not how it held itself out to the public, and there's no evidence suggesting that there's any real separation between the two. Easy Movers described itself as a full-service moving business, and its customers pay the company to transport goods from one location to the other. Easy Movers has to have workers in order to do this, and these facts demonstrate that these worker services are necessary to the business within the meaning of Section 212B of the Act. The company didn't argue that its drivers and helpers' work was performed outside of all places of its business, so the Director correctly noted that that argument was forfeited. But given the type of work that Easy Movers does, that is, transporting items from one place to another, that necessarily involves travel, and in the course of their travel, the employers wear Easy Movers uniforms, they drive in a truck that bears Easy Movers' logo, and the jobs that they go to are negotiated by Easy Movers. So even if it hadn't forfeited this argument, the company also couldn't show that the service was performed outside of the places of its business. Was there anything developed in the record as to how frequently the helpers and drivers got paid by Easy Movers? Your Honor, I think the record showed that they were paid twice a month, and I think the company's president testified that there was some difference between interstate moves versus intrastate moves. As far as how often they got paid? Not as far as how often, but how. There was some mention of that distinction between inter- and intrastate in the record. Did they get paid more if they went intrastate? Possibly, yes. Under the agreement that they entered into, do they have to deliver all jobs now under that agreement, and how can they do it based on that agreement? Did they have to agree to all jobs that were? The company's president testified that they could decline jobs if they wanted to. But after they had that amended agreement, didn't that get eclipsed? I'm not sure, Your Honor. What did that mean, they could decline a job? You know, I envisioned reading your briefs that a helper, for example, would show up today and be told I got a job to move Mrs. Smith from Evanston to Dixon, Illinois. Do you want to go? Is that what they meant, or what? I didn't understand it. It's not entirely clear. There wasn't a lot of development in the record about exactly how it is that, particularly with respect to the helpers, because I think we sort of understand what the driver does. But I'm not sure. How would it work if a driver wanted to turn down a job? I don't get it. Again, Your Honor, the record wasn't very well developed on this issue, and it is, of course, easy mover's burden to put forth any evidence that would support its claim that these workers were independent contractors and not employees. If we can go back to how much they were paid, were they paid a set rate, or did they get a percentage of the contract? I'm not clear on that, Your Honor. Okay. That's okay. They took a piece of the commission. They took a part of the payment that was made. They took a percentage of that. Okay. Well, again, maybe the learning point is that the director should make a better record for his point and their point. It seems to me that the way the brief is laid out, that easy movers would say to Mrs. Smith, we're going to charge you, and I don't know, but it sounds like, read like, we're going to charge you $20 an hour for George to move your furniture, and then between George and easy movers, George might get paid $10, and easy movers keeps $10 for their profit or paying their expenses. Hard to tell. But it seemed like the agreement was between easy movers and the customer, not between easy movers and the person at issue. I think that's right, Your Honor, and I think in terms of the agreement being between easy movers and the customers, and I think that that's what factored into the director's conclusion that these were not independent contractors because all the negotiating was done between the customer and the company, and the employee, as it were, simply agreed to take on the job or decline the job. So, again, my example, you show up for work today either knowing through custom and practice that I'm going to get $10 an hour as opposed to we have a job moving from Evanson to Dixon. Who wants to go for $10 an hour? It's sort of like assumed, the way I read it. But your position is that the drivers and helpers were not independent contractors. They didn't have their own trucks, and they didn't have a license to carry or move people's possessions. Right. And those are the sort of factors that are most, I guess, relevant to the determination of whether they're independent contractors or employees is whether they, you know, Section 212B talks about whether they perform their services within the normal course of the employer's business, and Section 212C talks about whether they have an independently established trade or business. In other words, do they have something that they, can they operate the business without the help of the company? You didn't find any of these men to be LLCs or have a corporation set up or a partnership, did you? None of that was in the record. No, Your Honor. I see. So, in this case, you know, as Your Honor pointed out, easy movers and not the individual workers is the one that And the company didn't produce any evidence suggesting that the workers could operate a moving business without a license. It also owned the moving trucks, and that is the most important piece of equipment when conducting a move. Because easy movers didn't satisfy Section 212B of the Act, the director was correct to find that the drivers and helpers were employees, and this Court actually doesn't need to consider the remainder of the conditions, but we've discussed Section 212C and easy movers' argument that its workers may have skills, and that may be true, but as the Court noted in AFM Messenger Service, whether a worker has skills that she could apply to a different company doesn't demonstrate that she has an independently established trade or business. And here, easy movers didn't present any evidence showing that these workers could operate without the support of a moving company. Section 212A of the Act asks about the company's direction and control over its workers. The Department's regulations set forth 25 factors that should be considered when the director decides whether there's direction or control. No one factor is determinative, and as the Court noted in Carpetland, not every factor will be relevant in every case. The regulations make clear that it's the business reality or the totality of the circumstances that determines the result. The uncontested evidence presented during the administrative proceedings shows that easy movers schedules the jobs for the workers, that it owns the trucks that the workers use to move the goods, that it has to agree before the drivers and helpers could use the trucks for any other purpose, and that the drivers and helpers have to submit records of their time to easy movers. So there was a factual dispute over whether the workers can decline jobs, but the undisputed facts discussed that I just mentioned support the director's conclusion that these workers were not free from easy movers' direction and control. Unless this Court has additional questions, I'd like to reserve the rest of my time for rebuttal. Could they set their own schedules on these jobs, and did they have any control whatsoever? In terms of how they, I think the testimony at the hearing was that once they agreed to a job, easy movers didn't control or determine how they conducted that job. So I guess the answer would be yes. Very well, thank you. Thank you. Mr. Helgeson? Did I pronounce that correctly? Yes, Helgeson. Okay. Thank you. Helgeson? Helgeson. Okay, thank you. Ryan Helgeson on behalf of Plaintiff Appellee. May it please the Court, the appellee is respectfully requesting that you affirm the lower court's reversal of the director's decision. The director's decision was clearly erroneous in deciding that the workers in question were employees rather than exempt under Section 212 of the Illinois Unemployment Insurance Act. He disregarded testimonial evidence. He failed to follow precedential case law, and he failed to follow his own agency's administrative rules. In determining that, this Court must look at the totality of the circumstances. I would like to make one clarification regarding the standard of review in this case, just to emphasize that it is the clearly erroneous standard. I know in the briefs, the indication was that the director's decisions would be prima facie correct, or would be considered prima facie correct, but that is only under purely factual findings, as the Supreme Court made clear in Carpeland and in the city of Belvedere. When there's mixed questions of law and fact, as there are when an administrative agency is applying facts to a statutory standard, then the clearly erroneous standard is what is applied, which is the definite and firm conviction that mistakes have been made. This, again, is differentiated from the questions of law, which, of course, are de novo. Here, even though there is some deference to the director's decision, a reviewing court must not blindly defer to that agency's decision. Okay, so why don't you tell us why the director was wrong? Yeah, absolutely. More specifically, tell us why his findings were against the manifest weight of the evidence. Well, the manifest weight of the evidence would be under the purely questions of law standard. But he made a number of factual findings. Is that correct? He did. All right, so let's just go to the first section, Part A of Section 212. Yes. What evidence do you have that the drivers and helpers were free from the control and direction of easy movers? They were able to turn down jobs, as was discussed. So pursuant to the discussion you had, as you brought up, easy movers would be contacted by a client, and a move would be scheduled pursuant to the client's needs. Then easy movers would contact drivers and driver's helpers, saying, I have this job. Are you available? Can you do it? They would say yes or no. If they said yes, they would come in and complete the job as needed. But the drivers and helpers were in the same business as easy movers.  Yes, they are in the same industry. In the same business. In the same industry, yes. And they can perform that business without easy movers' trucks, right? Yes. Or their licenses, correct? Yes. So how are they independent? Because they can perform it without the... But they didn't have any trucks. Oh, I'm sorry, I misunderstood. They can perform it without trucks or without licenses. Oh, they didn't? Yeah. So if I have a move to do and I need help carrying, if I have my own truck or I rent a truck from U-Haul, I need people to help me move, I can call up these drivers and helpers if I'm aware of them. Was there evidence in the record that they used their own trucks? No, there was not. And they also used easy movers' uniforms, correct? Yes, uniforms were provided. The record isn't clear as to whether or not they were actually wearing them, but they definitely were provided. Well, on that line, when you move a house, usually you need a dolly. Right. Who provided the dolly? In this case, the dolly came with the trucks. And typically you wrap Mama's antique furniture in heavy blankets. Right. Who provided the blankets? In this case, they were provided with the truck as well. And Mama's chest of drawers were real heavy, so you needed straps to carry it, right? The heavy straps that the men use or women use. Who provided the straps? I do not know in this case. Probably came with the truck, I guess. Who paid for the gas in the truck? Easy movers. Who paid for the insurance for the truck? Easy movers. Who was responsible if there was an accident? Easy movers, though damages could be charged back to the drivers. Okay. Additionally, if there was a tow truck needed, that would go to the drivers. Parking tickets would go to the drivers. So if these drivers or helpers didn't have a truck, dollies, blankets, gas, or insurance, they couldn't move Mrs. Smith from Evanston to Dixon, correct? Unless she had her own truck. They would help with the physical part of the movement. But there was no evidence that they did? No, the record is not developed as to that. Okay. So why would that presumption or finding by the director be erroneous with respect to these helpers with this company in that instance? That's the question. Well, the clear under Section A for direction and control would be that the director failed to follow Carpetland and go through those 25 factors. I think Carpetland is pretty clear that the administrative rules say they will examine those 25 factors. While it's true that not all will be relevant, and it's true that no one factor or group is determinative, that really increases the need to go through and perform a thorough review of those 25 factors rather than just referencing the three or so that they talk about explicitly without specific reference to the code and then passing references to others. I think the need there, the clear there was that they didn't go through that list and develop the record to make their own decision. You mean the 25 questions? Right, under Section A. Those are so dynamic, they change constantly. So you have to totally reinvent these every single time you get a new iteration? I don't think so. I think they're, I mean, not all will be relevant to every case. I mean, certainly there's bonding and stuff like that is pretty specific, but in general they are pretty general questions that can be applied to each decision. I think that was the rationale behind both the creation of that list and the Supreme Court's decision is that they should be applied. It provides a rather thorough checklist for the director to go through to make his determination, and here they failed to do that. The mere fact that he didn't go through that makes his decision an error? In part, yes. But he did go through some of them, correct? Yes, yes, he did. And you will acknowledge he wasn't required to go through all of them? I think he should have, yes. I think he should have gone through the list. But you just argued that some of them don't apply. Well, right. I mean, he can make a brief mention of which ones aren't relevant. Do you have a case that says you must go through all 25? Carpet Line doesn't expressly say it, but they note that the administrative rules say we will examine those, and then they identify that the director in that case, just as here, made passing reference to the 25 factors but then didn't expressly list any of those factors in their decision making. It's the same as here. In Carpet Line, they also address that the appellate court did go through that list individually and went through their findings. I think that's a clear indication that that's how things should be conducted. Moving on to Section B. The clear error in this case was that the director failed to analyze the business reality. He argued that you forfeited that issue because it's not raised. No. There's a two-part. B has two parts. First is that the service was performed outside the usual course of business or that it was performed outside all places of business. Did you raise it below? That's my question. Yes, sir. Only on the outside the usual course of business. Easy Movers has never made the argument that we're independent contractors because we performed outside the place of business. So you say you raised it in part down below? Well, this test isn't conjunctive. It's either A or B in this particular test, and Easy Movers at all levels has argued that the service was outside the usual course of business. So the service of the helpers is outside the business of Easy Movers? Correct. And tell me why that was. Tell us. So the distinction that Easy Movers makes is that they're the marketing side of the business, and the drivers and driver's helpers are the physical side of the moving business. The marketing consisted of advertising through various means, including the trucks themselves, which are bright pink and have smiling faces on them. They're an excellent marketing tool for them. But you couldn't move people or households without trucks, correct? Right, but I think it's similar to in carpet land. You can't install carpet without carpet. But the carpet installers didn't care where that carpet came from. Just as here the drivers and driver's helpers don't care where that truck comes from, if it's rented by the customer or owned by the customer. Once that truck's there, they can provide their service of physically moving the items. Well, I suppose if I owned a restaurant and I advertised that I have good food and come on in and eat, and I had somebody in the kitchen cooking, I could call the cook an independent contractor because I'm just the marker. He's the one providing the food. And, you know, where would we all be without those distinctions being allowed as far as paying unemployment insurance? Right, and I see your point there. I think in this case it's the IDS is making the decision that how a business should be organized. They see it's a moving company, so their decision is, well, clearly everyone there is employees because it's a moving company. And Easy Movers has decided to formulate their business a certain way, and they've attempted to do that. And the IDS is not their place to determine how a business should be organized, but to review the factors and see if that organization results in employees or independent contractors. So essentially what you're telling us is it was the intent of Easy Movers to make the workers and helpers independent contractors. Yes, that's how they wanted the business to be structured. That's how they felt it was. But your opponent made the argument that according to Ross, the party's intent is not relevant. Is she right? The party's intent isn't the determining factor. I think as the director looks through the contract in his decision, I think it's one of the considerations as the totality of the circumstances. It seems to me that if your argument was accepted, virtually every business could be set up so that if you wanted television parts, I could market to you that I sell or I have television parts available, and I could just bring in people to make them and provide them with the machinery, the tools, the raw materials, the boxes, the packaging, and everything else, and pay them on an hourly basis whether they want to come and work or not today, and just consider them independent contractors so that I could avoid paying unemployment insurance. And why not? I'm entitled to set up my business any way I want to the exclusion of considering these people that show up every day as employees. I'll just call them independent contractors. Pay them twice a month and that will be it. Right. I think the approach is to consider whether or not the services provided in question could be performed for the general public who wish to avail themselves of the service. So a manufacturer can't manufacture something for somebody in the general public unless they provide all of those parts. Here, in your example, it's the business that's providing all of those parts. Here, the drivers and driver's helpers can physically move stuff with the general public. They can't without an easy mover truck. They can't without dollies. They can't without blankets. They can't without gas or a license. Right. Well, I mean, the license is to haul the goods. So if the customer is providing the truck and the other means, they're providing the physical goods. Well, the customer isn't providing the truck. Easy mover provides the truck. Well, yeah, certainly in this case, yes. Well, this is the case we're talking about. Right. Now, easy movers might compete with Mayflower, right? Right. So, yes, the general consumer can go to Mayflower, easy movers, or another moving company. But we're talking about the relationship of the employee to easy movers. And those employees can't do this without the trucks and all the other material. Buying their own gloves and work boots, if that were the case, every construction company in the country would be claiming their employees are not employees. They're independent contractors because I make them buy their own work boots. Right. Yeah, I mean, the investment is low, but I don't believe the workers and, more importantly, easy movers should be punished because a capital investment for a business is minimal. Well, I don't think society or the law considers, you know, the obligation to pay unemployment premiums for insurance is punishable. Sort of like the cost of doing business, one would argue. Understood. I notice that my time is up here, so I will just conclude. Finish up if you have something. Okay. Just briefly about Section C, which we had discussed in part here. I believe that the correct standard is positive in carpet land, which focuses on the degree of economic independence, which could survive a particular relationship between the individuals and the business in question, which is the approach that, as I discussed, whether that could be viewed as an independent trade because they're able to provide it to the general public who wishes to avail them of that service. Thus, in conclusion, I believe a thorough review of the full record evidence should leave this court, as it did the lower court, with the firm conviction that the director's decision was clearly erroneous. Accordingly, the appellee respectfully requests that this court affirm the circuit court's decision. Any further questions, Your Honors? Thank you. Thank you. Counsel for the director. Your Honors, with respect to Section 212A, as this court acknowledged, the director wasn't required to go through and make a written finding about each of the factors, but the record suggests that he did consider all of them in the director's decision. He found noteworthy that Easy Movers had the right to hire and fire its workers, which is Section 2732.200G21, that the drivers and helpers furnished their time records to Easy Movers, that Easy Movers provided the workers with the moving truck, which is the most important tool for the job, and various other factors that are set forth in the regulations. The director did note those factors in his decision. As counsel and this court have noted, the essential components of the business were provided by Easy Movers, which demonstrates that these were employees. This case is very similar to cases like AFM Messenger Service, where the court upheld the director's determination that drivers were employees because the drivers couldn't operate a business without a company like AFM. This case is also similar to L.A. McMahon versus the Department of Employment Security, where the court found no clear error in the director's finding that window washer's services were not outside the usual course of business of a window washing company. In both cases, the courts upheld the director's decision, and the same result should occur here. Because a reasonable person could agree with the director's conclusion that Easy Movers' workers were employees and not independent contractors, the director's decision was not clearly erroneous, and we ask this court to reinstate it. Unless there are any further questions? Thank you, Your Honors. Thank you very much. We will take the matter under advisement, and we appreciate your efforts, both of you, on behalf of your clients and well-prepared and well-presented briefs. So with that, the court will stand in recess.